FILED BY FAX
PURSUANT TO LOCAL RULES

1   Lionel Z. Glancy (#134180)
    Michael Goldberg (188669)
2   Robert V. Prongay (#270796)
    GLANCY BINKOW & GOLDBERG LLP
3   1925 Century Park East, Suite 2100
    Los Angeles, CA 90067
4   Telephone: (310) 201-9150
    Facsimile: (310) 201-9160
5   Email: info@glancylaw.com

6
    Marc I. Gross
7   Jeremy A. Lieberman
    POMERANTZ GROSSMAN HUFFORD
8       DAHLSTROM & GROSS LLP
    600 Third Avenue, 20th Floor
9   New York, New York 10016
    Telephone: (212) 661-1100
10  Facsimile: (212) 661-8665
    migross@pomlaw.com
11  jalieberman@pomlaw.com

12
13  *Counsel for Plaintiff Thanh V. Le*
    *[Additional Counsel on Signature Page]*
14

FILED
SEP 06 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

15          **UNITED STATES DISTRICT COURT**       **YGR**
16          **NORTHERN DISTRICT OF CALIFORNIA**
17                                                  **C 12    4655**

| | |
|---|---|
| 18  THANH V. LE, Individually and on Behalf of All Others Similarly Situated, | Case No.: _____ |
| 19                                    Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| 20                      v. | |
| 21  SUNTECH POWER HOLDINGS CO., LTD., | |
| 22  ZHENGRONG SHI, DAVID KING AND AMY YI ZHANG, | <u>CLASS ACTION</u> |
| 23                          Defendants. | |
| 24 | <u>JURY TRIAL DEMANDED</u> |

25
26
27
28

Plaintiff Thanh V. Le ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Suntech Power Holdings Co., Ltd. ("Suntech" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Suntech; and (c) review of other publicly available information concerning Suntech.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of purchasers of Suntech's American depositary shares ("ADSs") between August 18, 2010 and July 30, 2012, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Suntech, a solar energy company, engages in the design, development, manufacture, and marketing of photovoltaic products. Its products are used to provide electric power for residential, commercial, industrial, and public utility applications primarily in Germany, Italy, Spain, France, Benelux, Greece, the United States, Canada, China, the Middle East, Australia, and Japan.

3.      In 2008, the Company entered into a commitment to invest in Global Solar Fund, S.C.A, Sicar ("GSF"), an investment fund created to make investments in private companies that own or develop projects in the solar energy sector. The Company committed to invest €258.0 million in return for 86% of the share equity of GSF. As of December 31, 2011, Suntech had contributed a total of €155.7 million to GSF. Currently, Suntech has a 50% voting interest in GSF. According to the Company, the general partner of GSF is Global Solar Fund Partners S.a.r.l., which is responsible for the management of GSF. As Suntech explained:

---

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

The composition of the board of managers of the general partner is as follows: Category A managers include Mr. Javier Romero and Category B managers include Dr. Zhengrong Shi, our chairman and chief executive officer, and Dr. Stuart Wenham, our chief technology officer. Category A managers are entrusted with the day-to-day management of GSF, and any investment/divestment decision shall always include the favorable votes of the Category A manager and at least one Category B manager of the general partner.

Moreover, Best (Regent) Asia Group Ltd., a company ultimately held by Defendant Zhengrong Shi ("Shi"), Suntech's Chief Executive Officer ("CEO"), holds an investment amounting to a 10.67% equity interest in GSF.

4.      In May 2010, Suntech entered into an arrangement in which it guaranteed payment obligations under finance facilities provided by China Development Bank to Solar Puglia II, S.ar.L, an investee company of GSF, in the amount of approximately €554.2 million. Additionally, as further security to China Development Bank, the Company was required to maintain cash collateral accounts with a commercial bank in Luxembourg in an amount equal to one installment payment of amounts due under the finance facilities amounting to approximately €30.0 million. As security for the Company's obligations under the guarantee, Suntech purportedly received a pledge of €560.0 million in German government bonds from GSF Capital Pte Ltd., the parent of the general partner of GSF. According to the Company, the fair value of the debt guarantee was approximately €2.0 million, which was recorded in Suntech's balance sheet at the effective date of the guarantee.

5.      In November 2011, the Company transferred approximately 6.7% of its interests in GSF to affiliates of Mr. Romero, the Category A manager of Global Solar Fund Partners S.a.r.l. According to the Company, the transfer was made in recognition of Mr. Romero's contribution to the Company. As a result of the transfer, the Company's interests in the share equity of GSF were reduced from 86.0% to 79.3%.

6.      On July 30, 2012, the Company disclosed that it was conducting an investigation into the security interest that Suntech purportedly received in May 2010 from GSF Capital Pte Ltd. According

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

2

1   to the Company, outside counsel that had been hired as part of Suntech's initiative to monetize its

2   investment in GSF had noted certain facts and circumstances suggesting that the German government

3   bonds in the amount of €560.0 million purportedly pledged to the Company may not have ever existed.

4   The Company further disclosed that it had filed legal claims against relevant parties in multiple

5   jurisdictions to assert control of GSF and its assets.

6

7          7.      On this news, shares of the Company declined $0.23 per share, or 14.65%, to close on

8   July 30, 2012, at $1.34 per share, on unusually heavy trading volume, and further declined another

9   $0.21, or 15.67%, to close on July 31, 2012, at $1.13 per share, also on unusually heavy trading

10  volume.

11         8.      Throughout the Class Period, Defendants made false and/or misleading statements, as

12  well as failed to disclose material adverse facts about the Company's business, operations, and

13

14  prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose:

15  (1) that Suntech had not been pledged €560.0 million in German government bonds from GSF Capital

16  Pte Ltd., in connection with its May 2010 financing arrangement with the China Development Bank;

17  (2) that the Company lacked internal and financial controls; and (3) that, as a result, the Company's

18

19  financial statements were materially false and misleading at all relevant times.

20         9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in

21  the market value of the Company's securities, Plaintiff and other Class members have suffered

22  significant losses and damages.

23                              **JURISDICTION AND VENUE**

24         10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15

25  U.S.C.§§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-

26

27  5).

28

---

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

11.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

12.   Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. Additionally, the Company maintains an office in this Judicial District.

13.   In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.   Plaintiff Thanh V. Le, as set forth in the accompanying certification, incorporated by reference herein, purchased Suntech ADSs during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.   Defendant Suntech is a Cayman Islands corporation with its principal executive offices located at 9 Xinhua Road, New District, Wuxi, Jiangsu Province 214028, People's Republic of China.

16.   Defendant Shi was, at all relevant times, Chairman of the Company's Board of Directors and CEO of the Company.

17.   Defendant David King ("King") was, at all relevant times, Chief Financial Officer ("CFO") and a director of Suntech since May 2011.

18.   Defendant Amy Yi Zhang ("Zhang") was, at all relevant times, CFO and a director of Suntech prior to May 2011.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4

19.     Defendants Shi, King and Zhang are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Suntech's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Suntech, a solar energy company, engages in the design, development, manufacture, and marketing of photovoltaic products. Its products are used to provide electric power for residential, commercial, industrial, and public utility applications primarily in Germany, Italy, Spain, France, Benelux, Greece, the United States, Canada, China, the Middle East, Australia, and Japan.

21.     In 2008, the Company entered into a commitment to invest in GSF, an investment fund created to make investments in private companies that own or develop projects in the solar energy sector. The Company committed to invest €258.0 million in return for 86% of the share equity of GSF. As of December 31, 2011, Suntech had contributed a total of €155.7 million to GSF. Currently, Suntech has a 50% voting interest in GSF. According to the Company, the general partner of GSF is Global Solar Fund Partners S.a.r.l., which is responsible for the management of GSF. As Suntech explained:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4

> The composition of the board of managers of the general partner is as follows: Category A managers include Mr. Javier Romero and Category B managers include Dr. Zhengrong Shi, our chairman and chief executive officer, and Dr. Stuart Wenham, our chief technology officer. Category A managers are entrusted with the day-to-day management of GSF, and any investment/divestment decision shall always include the favorable votes of the Category A manager and at least one Category B manager of the general partner.

5 Moreover, Best (Regent) Asia Group Ltd., a company ultimately held by Defendant Shi holds an

6 investment amounting to a 10.67% equity interest in GSF.

7       22.    In May 2010, Suntech entered into an arrangement in which it guaranteed payment

8
9 obligations under finance facilities provided by China Development Bank to Solar Puglia II, S.ar.L, an

10 investee company of GSF, in the amount of approximately €554.2 million. Additionally, as further

11 security to China Development Bank, the Company was required to maintain cash collateral accounts

12 with a commercial bank in Luxembourg in an amount equal to one installment payment of amounts due

13 under the finance facilities amounting to approximately €30.0 million. As security for the Company's

14 obligations under the guarantee, Suntech purportedly received a pledge of €560.0 million in German

15
16 government bonds from GSF Capital Pte Ltd., the parent of the general partner of GSF. According to

17 the Company, the fair value of the debt guarantee was approximately €2.0 million, which was recorded

18 in Suntech's balance sheet at the effective date of the guarantee.

19       23.    In November 2011, the Company transferred approximately 6.7% of its interests in GSF

20 to affiliates of Mr. Romero, the Category A manager of Global Solar Fund Partners S.a.r.l. According

21
22 to the Company, the transfer was made in recognition of Mr. Romero's contribution to the Company.

23 As a result of the transfer, the Company's interests in the share equity of GSF were reduced from

24 86.0% to 79.3%.

25              **Materially False and Misleading Statements Issued During the Class Period**

26       24.    The Class Period begins on August 18, 2010. On this day, the Company held a

27 conference call with investors, analysts, and other market participants, to discuss the Company's

28

---

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

financial results for the 2010 fiscal second quarter. Defendants Shi and Zhang were present. Therein, Defendant Shi, in relevant part, stated:

> Now, I would like to give a update on our investment in the Global Solar Fund. I'm pleased to say that GSF has made significant progress, both in terms of the project installation and in project financing. In the third quarter, we received two payments from GSF-invested companies totaling 27.7 million euros. The first payment of 1.7 million euros is going to the outstanding receivables from shipments made in 2009. The European financing for the first set of projects has been fully approved, and we expect to receive the remainder of the relayed outstanding receivables in the third quarter.
>
> *Secondly, GSF has successfully secured and commenced draw-down from a second round of project financing from different banks for additional projects in its portfolio. With secured financing in place and stringent payment terms, Suntech agreed to make further shipments to GSF. To date we have already received approximately 20.6 million euros for recent shipments to GSF and we intend to continue to send shipments in the second half of the year. The associated revenue will be clearly disclosed our third quarter and fourth quarter earnings reports.*
>
> *As GSF starts to complete projects in the second half of this year, it will progress, it will build a track record.* That will improve access to financing for future projects and start to generate returns for Suntech's investment. We will keep you updated on their progress.

(Emphasis added).

25.     On November 17, 2010, the Company issued a press release entitled, "Suntech Reports Third Quarter 2010 Financial Results." Therein, the Company, in relevant part, stated:

**Third Quarter 2010 Highlights**

- Total net revenues were $743.7 million in the third quarter of 2010, representing growth of 19.0% sequentially and 57.2% year-over-year.

- Total PV shipments increased 25.3% sequentially and 107.1% year-over-year.

- Gross profit margin for the core wafer to module business was 18.2% in the third quarter of 2010.

- Consolidated gross profit margin was 16.4% in the third quarter of 2010.

- GAAP net income attributable to holders of ordinary shares was $33.1 million, or $0.18 per diluted American Depository Share (ADS). Each ADS represents one ordinary share.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*     *     *

**Third Quarter 2010 Results**

Total net revenues for the third quarter of 2010 were $743.7 million, an increase of 19.0% from $625.1 million in the second quarter of 2010 and an increase of 57.2% from $473.1 million in the third quarter of 2009. Total net revenues to the investee companies of GSF were $143.8million in the third quarter of 2010. Revenue and profit related to the sales to investee companies of GSF during the third quarter of 2010 were fully recognized with accounts receivable fully collected during the same period.

26.     On March 8, 2011, the Company issued a press release entitled, "Suntech Announces Fourth Quarter and Full Year 2010 Financial Results." Therein, the Company, in relevant part, stated:

**Fourth Quarter 2010 Highlights**

- Total net revenues were $945.1 million in the fourth quarter of 2010, representing growth of 27.1% sequentially and 61.9% year-over-year.

- Total PV shipments increased 19.8% sequentially and 87.3% year-over-year.

- Gross profit margin for the core wafer to module business was 17.4% in the fourth quarter of 2010.

- Consolidated gross profit margin was 16.2% in the fourth quarter of 2010.

- Net income after taxes before non-controlling interest and equity in earnings of affiliates was $61.1 million in the fourth quarter of 2010.

- Suntech realized $24 million equity income from the earnings of the recently acquired wafer business in the fourth quarter of 2010.

- Equity in earnings of affiliates in the fourth quarter of 2010, inclusive of the $24 million equity income from earnings of the wafer business, increased to $322.9 million.

- Net income attributable to holders of ordinary shares was $383.4 million, or $2.02 per diluted American Depository Share (ADS). Each ADS represents one ordinary share.

**Full Year 2010 Highlights**

- Total net revenues were $2,901.9 million in 2010, representing 71.4% growth year-over-year.

- Total PV shipments were 1,572MW, representing 124.5% growth year-over-year.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- Gross profit margin for the core wafer to module business was 18.6%.

- Consolidated gross profit margin was 17.4%.

- Net income attributable to holders of ordinary shares was $262.3 million, or $1.44 per diluted American Depository Share (ADS). Each ADS represents one ordinary share.

- Suntech achieved 1.8 GW of PV cell and module capacity, and 500MW of silicon ingot and wafer capacity as of December 31, 2010.

\*       \*       \*

**Fourth Quarter 2010 Results**

Total net revenues for the fourth quarter of 2010 were $945.1 million, an increase of 27.1% from $743.7 million in the third quarter of 2010 and an increase of 61.9% from $583.6 million in the fourth quarter of 2009.

Total net revenues from investee companies of GSF were $53.6 million in the fourth quarter of 2010.

27.     On May 9, 2011, Suntech filed its Annual Report on Form 20-F with the SEC for the 2010 fiscal year. The Company's Form 20-F was signed by Defendant Shi and reaffirmed the Company's financial results announced on March 8, 2011. The Company's Form 20-F also contained Sarbanes-Oxley required certifications, signed by Defendants Shi and Zhang, who certified:

1.     I have reviewed this annual report on Form 20-F of Suntech Power Holdings Co., Ltd.;

2.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods present in this report;

4.     The company's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the company and have:

---

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9

a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)    Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)    Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the company's internal control over financial reporting; and

5.    The company's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the company's auditors and the audit committee of the company's board of directors (or persons performing the equivalent functions):

a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

28.    Additionally, the Company's Annual Report filed on Form 20-F with the SEC on May 9, 2011, in relevant part, stated:

In June 2008, we signed a commitment to invest in Global Solar Fund, S.C.A, Sicar. GSF is an investment fund created to make investments in private companies that own or develop projects in the solar energy sector. Our initial commitment to GSF was €58.0 million, and in September 2008 we increased the size of our commitment by an additional €200.0 million to an aggregate total of €258.0 million in return for 86% of the share equity in GSF. As of December 31, 2010, we had contributed a total of €155.7

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

10

million to GSF, representing all of our contribution obligations by such date. We have a 50% voting interest in GSF.

The general partner of GSF is Global Solar Fund Partners S.à r.l., which is responsible for the management of GSF. The composition of the board of managers of the general partner is as follows: Category A managers include Mr. Javier Romero and Category B managers include Dr. Zhengrong Shi, our chairman and chief executive officer, and Dr. Stuart Wenham, our chief technology officer. Category A managers are entrusted with the day-to-day management of GSF, and any investment/divestment decision shall always include the favorable votes of Category A managers and at least one Category B manager of the general partner. Mr. Javier Romero has never served as an employee of the Company, but he has previously served as a non-executive representative and sales agent of the Company where he facilitated sales of our PV products in Spain until March 2008. In connection therewith, services he provided included collaborating in the identification of business opportunities, providing support in developing good relations between ourselves and customers, introducing our personnel before representatives of the customers, advising in the preparation and negotiation of offers and contracts, and collaborating with us in the development of price policies in Spain.

As of December 31, 2009, GSF had a total of seven investee companies, namely, Energetica Wing I S.r.l, Energetica Wing II S.r.l., Italgest Photovoltaic S.r.l, SV New S.r.l, Solar Puglia I S.r.l and Solar Puglia II S.r.l, each a wholly-owned subsidiary of GSF, and Sicily Sun Power S.r.l., which is 75% owned by GSF. As of December 31, 2010, GSF had a total of seven investee companies, namely Sicily Sun Power S.r.l, SV New S.r.l, Solar Puglia I S.r.l, Solar Puglia II S.r.l., Global Solar Fund Engineering Luxembourg S.r.l., GSF Capital Holland B.V., and Global Solar Fund Engineering Company Limited, each a wholly-owned subsidiary of GSF. As of such dates, there were no separate interests in the investee companies held by any member of the board of managers of the general partner of GSF. GSF had made aggregate commitments to such investee companies totaling €24.0 million and €22.1 as of December 31, 2009 and 2010, respectively. Additional investments may be made into GSF by third parties, which may include our partners, consultants, employees and affiliates. Best (Regent) Asia Group Ltd., a company ultimately held by Dr. Shi, our chairman and chief executive officer, holds an investment amounting to a 10.67% equity interest in GSF.

In 2009 and 2010, we shipped solar panels to GSF investee companies with a total value of $115.8 million and $197.4 million respectively, and as of Dec. 31 2010, we have $10.4 million account receivable from GSF investee companies. We may from time to time supply additional solar panels to investee companies of GSF upon terms to be determined which may include acceptance testing of the panels, damages provisions for failure to meet specified delivery obligations or power output guarantees, system performance warrantees, and bank guarantees to support potential monetary obligations which may become owing under the agreements.

In May 2010, we consummated an arrangement in which we guaranteed payment obligations under finance facilities provided by China Development Bank to Solar Puglia II, S.ar.L, an investee company of GSF, amounting to approximately €554.2 million. In

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

addition, as additional security to China Development Bank, we are required to maintain cash collateral accounts with a commercial bank in Luxembourg in an amount equal to one installment payment of amounts due under the finance facilities amounting to approximately €30.0 million. Events of default under the finance facilities include failure to pay amounts due on any payment date, failure of the borrower to comply with its financial covenant, failure by the borrower to comply with other provisions of the agreement subject to a 10 day cure period, a cross default by the borrower on other financial indebtedness in excess of €1.0 million, bankruptcy or other events of insolvency, and a material adverse change in the business, property, liabilities, operations, prospects or financial condition of the borrower or us, or the ability of the borrower or us to perform its obligations under the agreement. In addition, in the event certain power plants to be developed are not connected to the power grid before January 30, 2011, China Development Bank has the right to declare a proportionate amount of the outstanding loans immediately due and payable representing the percentage of the power to be generated by the unconnected plants to the planned installed capacity of 123 MW. None of the power plants developed were connected to the power grid by January 30, 2011, and as a result China Development Bank is entitled to demand immediate payment of the entire loan amount. GSF has received oral assurances from China Development Bank that it does not intend to demand payment of the loan amount in the event the power plants can be connected to the grid by June 30, 2011. As security for our obligations under the guarantee, we received a pledge of €560.0 million in German government bonds from GSF Capital Pte Ltd., the parent of the general partner of GSF. The fair value of the debt guarantee was approximately €2.0 million, which has been recorded in our balance sheet at the effective date of this guarantee.

29.      On March 8, 2012, the Company issued a press release entitled, "Suntech Reports Fourth Quarter and Full Year 2011 Financial Results." Therein, the Company, in relevant part, stated:

**Fourth Quarter 2011 Highlights**

- Total net revenues were $629.0 million.

- Total PV shipments decreased 9.7% sequentially and increased 3.2% year-over-year.

- Gross profit margin was 9.9%.

- Net loss attributable to holders of American Depository Shares (ADS) was $136.9 million, or $0.76 per diluted ADS.

- Improved accounts receivable and inventory by $489.6 million from the third quarter of 2011.

- Generated positive operating cash flow of $240.1 million.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Full Year 2011 Highlights**

- Total net revenues were $3,146.6 million in 2011.

- Total PV shipments were 2,096MW, representing 33.3% growth year-over-year.

- Gross profit margin was 12.3%.

- Net loss attributable to holders of ADSs was $1,006.7 million, or $5.58 per diluted ADS.

- Generated positive operating cash flow of $80.1 million.

30. On April 27, 2012, Suntech filed its Annual Report on Form 20-F with the SEC for the 2011 fiscal year. The Company's Form 20-F was signed by Defendant Shi and reaffirmed the Company's financial results announced on March 8, 2012. The Company's Form 20-F also contained Sarbanes-Oxley required certifications, signed by Defendants Shi and King, substantially similar to the certifications contained in ¶ 27, *supra*.

31. Additionally, the Company's Annual Report filed on Form 20-F with the SEC on April 27, 2012, in relevant part, stated:

> In June 2008, we entered into a commitment to invest in Global Solar Fund, S.C.A, Sicar. GSF is an investment fund created to make investments in private companies that own or develop projects in the solar energy sector. Our initial commitment to GSF was €58.0 million, and in September 2008 we increased the size of our commitment by an additional €200.0 million to an aggregate total of €258.0 million in return for 86% of the share equity in GSF. As of December 31, 2011, we had contributed a total of €155.7 million to GSF, fulfilling all of our contribution obligations by such date. We have a 50% voting interest in GSF.

> As of December 31, 2011, GSF had a total of seven investee companies, namely Sicily Sun Power S.r.l, SV New S.r.l, Solar Puglia I S.r.l, Solar Puglia II S.r.l., Global Solar Fund Engineering Luxembourg S.r.l., GSF Capital Holland B.V., and Global Solar Fund Engineering Company Limited, each a wholly-owned subsidiary of GSF. As of such dates, there were no separate interests in the investee companies held by any member of the board of managers of the general partner of GSF. GSF had made aggregate commitments to such investee companies totaling €24.0 million, €22.1 million, and €9 million as of December 31, 2009, 2010 and 2011, respectively. Additional investments may be made into GSF by third parties, which may include our partners, consultants, employees and affiliates. Best (Regent) Asia Group Ltd., a company ultimately held by Dr. Shi, our chairman and chief executive officer, holds an investment amounting to a 10.67% equity interest in GSF.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

In 2009, 2010 and 2011, we shipped solar panels to GSF investee companies with a total value of $115.8 million, $197.4 million and $33.6 million, respectively. As of December 31 2011, we had $19.5 million account receivable from GSF investee companies. We may from time to time supply additional solar panels to investee companies of GSF upon terms to be determined which may include acceptance testing of the panels, damages provisions for failure to meet specified delivery obligations or power output guarantees, system performance warrantees, and bank guarantees to support potential monetary obligations which may become owing under the agreements.

In May 2010, we consummated an arrangement in which we guaranteed payment obligations under finance facilities provided by China Development Bank to Solar Puglia II, S.ar.L, an investee company of GSF, in the amount of approximately €554.2 million. In addition, as additional security to China Development Bank, we are required to maintain cash collateral accounts with a commercial bank in Luxembourg in an amount equal to one installment payment of amounts due under the finance facilities amounting to approximately €30.0 million. Events of default under the finance facilities include failure to pay amounts due on any payment date, failure of the borrower to comply with its financial covenant, failure by the borrower to comply with other provisions of the agreement subject to a 10 day cure period, any cross default by the borrower on other financial indebtedness in excess of €1.0 million, bankruptcy or other events of insolvency, and any material adverse change in the business, property, liabilities, operations, prospects or financial condition of the borrower or us, or the ability of the borrower or us to perform its obligations under the agreement. As of December 31, 2011, approximately 145 MW of power plants have been completed, of which approximately 143 MW have been connected to the grid. As security for our obligations under the guarantee, we received a pledge of €560.0 million in German government bonds from GSF Capital Pte Ltd., the parent of the general partner of GSF. The fair value of the debt guarantee was approximately €2.0 million, was been recorded in our balance sheet at the effective date of this guarantee. As of December 31, 2011, the carrying amount of such debt guarantee was $1.8 million.

In November 2011, we consummated a transfer of approximately 6.7% of our interests in GSF to affiliates of Mr. Romero, the Category A manager of Global Solar Fund Partners S.ar.l. Agreements for such transfer had been entered into with affiliates of Mr. Romero to settle amounts outstanding, as recognition of Mr. Romero's contribution to the Company. As a result of the consummation of such transfer, our interests in the share equity of GSF have been reduced from 86.0% to 79.3%.

32.     The statements contained in ¶¶ 24-31, were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that Suntech had not been pledged €560.0 million in German government bonds from GSF Capital Pte Ltd., in connection with its May 2010 financing arrangement with the China Development Bank; (2) that the Company lacked

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

14

1    internal and financial controls; and (3) that, as a result, the Company's financial statements were

2    materially false and misleading at all relevant times.

3    ### Disclosures at the End of the Class Period

4    33.    On July 30, 2012, the Company issued a press release entitled, "Suntech Investigates

5    Security Interest in Connection With GSF." Therein, the Company, in relevant part, disclosed:

> Suntech Power Holdings Co., Ltd. (NYSE: STP) ("Suntech" or the "Company") today announced that the Company is conducting an investigation into a security interest Suntech received in connection with its investment in Global Solar Fund, S.C.A., Sicar ("GSF"). Based on recent review and inquiries, Suntech suspects that the collateral related to the security interest may not have existed and the Company may have been a victim of fraud.

> In May 2010, Suntech guaranteed payment obligations related to finance facilities provided to an investee company of GSF in the amount of approximately €554.2 million. As security for the Company's obligations under the guarantee, Suntech received a pledge of German government bonds (the "Bonds") in the amount of €560.0 million from GSF Capital Pte Ltd., a third-party investor of GSF. The Company's investment in GSF is discussed in the Company's 2011 Annual Report on Form 20-F, including on pages 98 to 99 and F-29 to F-30. As part of Suntech's initiative to monetize its investment in GSF, the Company engaged outside counsel to review and assist the process. As a result of these efforts, the Company's outside counsel recently noted certain facts and circumstances suggesting that the Bonds may not have existed and Suntech may have been a victim of fraud.

> Dr. Zhengrong Shi, Suntech's chairman and CEO said, "We are very disappointed that this has occurred and it has the highest level of attention from the Company and the board, including the Audit Committee. There is no indication that management had any involvement, and we are vigorously pursuing all avenues to resolve this matter and ensure that we protect the interests of our shareholders."

> "While we continue to investigate and take actions to resolve this matter, Suntech's daily operations will not be impacted. It's business as usual and we remain focused on supplying the market with excellent solar products," added Dr. Shi.

> The Company pointed out that the findings thus far are not conclusive and that Suntech is continuing to investigate this matter. The Company has filed claims against relevant parties in multiple jurisdictions to assert control of GSF and its assets, and protect the interests of Suntech's shareholders. To the best of the Company's knowledge, payments of all scheduled obligations under such finance facilities remain current.

> Suntech is currently assessing the potential impact of the suspected fraud on its consolidated financial statements. The Company noted that it may delay its earnings

---

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

announcement for the second quarter of 2012 until it completes the investigation and financial assessment. However, the Company plans to publish key operating metrics in the week beginning the 20th of August, 2012 and to inform investors of any material developments in a timely manner.

34.     On this news, shares of the Company declined $0.23 per share, or 14.65%, to close on July 30, 2012, at $1.34 per share, on unusually heavy volume, and further declined another $0.21, or 15.67%, to close on July 31, 2012, at $1.13 per share, also on unusually heavy volume.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased Suntech ADSs between August 18, 2010 and July 30, 2012, inclusive (the "Class Period") and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Suntech's securities were actively traded on the New York Stock Exchange (the "NYSE"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Suntech shares were traded publicly during the Class Period on the NYSE. As of December 31, 2011, the Company had 181,163,878 ADSs outstanding. Record owners and other members of the Class may be identified from records maintained by Suntech or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is

---

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

complained of herein.

38. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Suntech; and

(c) To what extent the members of the Class have sustained damages and the proper measure of damages.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

41. The market for Suntech's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Suntech's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Suntech's securities relying upon the integrity of the market price of the Company's securities and market information relating to Suntech,

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

and have been damaged thereby.

42. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Suntech's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Suntech's business, operations, and prospects as alleged herein.

43. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Suntech's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

44. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

45. During the Class Period, Plaintiff and the Class purchased Suntech's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1  investors' losses.

2  **SCIENTER ALLEGATIONS**

3     46.   As alleged herein, Defendants acted with scienter in that Defendants knew that the

4  public documents and statements issued or disseminated in the name of the Company were materially

5  false and/or misleading; knew that such statements or documents would be issued or disseminated to

6
7  the investing public; and knowingly and substantially participated or acquiesced in the issuance or

8  dissemination of such statements or documents as primary violations of the federal securities laws. As

9  set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the

10  true facts regarding Suntech, his/her control over, and/or receipt and/or modification of Suntech's

11
12  allegedly materially misleading misstatements and/or their associations with the Company which made

13  them privy to confidential proprietary information concerning Suntech, participated in the fraudulent

14  scheme alleged herein.

15  **APPLICABILITY OF PRESUMPTION OF RELIANCE**
**(FRAUD-ON-THE-MARKET DOCTRINE)**

16
17     47.   The market for Suntech's securities was open, well-developed and efficient at all

18  relevant times. As a result of the materially false and/or misleading statements and/or failures to

19  disclose, Suntech's securities traded at artificially inflated prices during the Class Period. On February

20  18, 2011, the Company's ADSs closed at a Class Period high of $10.71 per share. Plaintiff and other

21  members of the Class purchased or otherwise acquired the Company's securities relying upon the

22
23  integrity of the market price of Suntech's securities and market information relating to Suntech, and

24  have been damaged thereby.

25     48.   During the Class Period, the artificial inflation of Suntech's securities was caused by the

26  material misrepresentations and/or omissions particularized in this Complaint causing the damages

27  sustained by Plaintiff and other members of the Class. As described herein, during the Class Period,

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Defendants made or caused to be made a series of materially false and/or misleading statements about Suntech's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Suntech and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company securities. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

49. At all relevant times, the market for Suntech's securities was an efficient market for the following reasons, among others:

(a) Suntech securities met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Suntech filed periodic public reports with the SEC and/or the NYSE;

(c) Suntech regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Suntech was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

50. As a result of the foregoing, the market for Suntech's securities promptly digested

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

20

current information regarding Suntech from all publicly available sources and reflected such information in Suntech's ADSs share price. Under these circumstances, all purchasers of Suntech's securities during the Class Period suffered similar injury through their purchase of Suntech's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

51. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements leaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Suntech who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

52. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Suntech's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

54.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Suntech's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

55.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Suntech's financial well-being and prospects, as specified herein.

56.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Suntech's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Suntech and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

57.     Each of the Individual Defendants' primary liability, and controlling person liability,

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

58.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Suntech's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Suntech's securities was

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

23

artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Suntech's securities during the Class Period at artificially high prices and were damaged thereby.

60.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Suntech was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Suntech securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

61.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

63.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

---

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

24

64.     The Individual Defendants acted as controlling persons of Suntech within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations' as alleged herein, and exercised the same.

66.     As set forth above, Suntech and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  September 6, 2012

GLANCY BINKOW & GOLDBERG LLP

By: _____
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

POMERANTZ GROSSMAN HUFFORD
   DAHLSTROM & GROSS LLP
Marc I. Gross
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
migross@pomlaw.com
jalieberman@pomlaw.com

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

26

POMERANTZ GROSSMAN HUFFORD
  DAHLSTROM & GROSS LLP
Patrick V. Dahlstrom
Ten South LaSalle Street - Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

27

## CERTIFICATION OF THANH V. LE PURSUANT TO
## THE PRIVATE SECURITIES LITIGATION REFORM ACT

I, Thanh V. Le, hereby declare as follows:

1. I have reviewed the facts and allegations in a complaint against Suntech Power Holdings Co. Ltd. ("STP"), and related parties, and authorize its filing.

2. I did not purchase STP securities at the direction of plaintiffs' counsel or in order to participate in any private action under the federal securities laws.

3. I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. The attached Schedule A lists all of my purchases and sales in STP securities for the class period between August 18, 2010 and July 30, 2012.

5. During the three year period preceding the date hereof, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

6. I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except for reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 4th day of September, 2012 at Emporia, KS.


_____
Thanh V. Le

## SCHEDULE A

## SECURITIES TRANSACTIONS

**Purchases**

| Date Acquired | Amount of Securities | Price |
|---|---|---|
| 1/12/12 | 2,000 | $3.18 |
| 1/13/12 | 10,000 | $3.01 |
| 2/8/12 | 10,000 | $3.88 |
| 2/9/12 | 10,000 | $4.16 |
| 2/16/12 | 5,924 | $3.36 |
| 2/22/12 | 20,000 | $3.56 |

**Sales**

| Date Sold | Amount of Securities | Price |
|---|---|---|
| 1/17/12 | 12,000 | $3.19 |
| 2/9/12 | 10,000 | $4.03 |
| 4/17/12 | 5,000 | $2.76 |